## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TURNER CONSTRUCTION COMPANY**
11413 Isaac Newton Square South
Reston, Virginia, 20190

      Plaintiff,

v.

**INDEPENDENCE EXCAVATING, INC.**
5720 Schaaf Road
Independence, Ohio 44131

Case No. _____

      Serve: Registered Agent Solutions Inc.
           Registered Agent
           1090 Vermont Avenue, N.W.
           Suite 910
           Washington, D.C. 20005

      Defendant.

## COMPLAINT

COMES NOW, Plaintiff Turner Construction Company ("Turner"), by and through its undersigned counsel, Peckar & Abramson, P.C., and for its Complaint against Defendant Independence Excavating, Inc. ("IX"), states the following upon information and belief:

## PARTIES

1.     Turner is a New York corporation in good standing with its principal place of business located at 375 Hudson Street, New York, NY 10014.

2.     IX is an Ohio corporation with its principal place of business located at 5720 Schaaf Road, Independence, Ohio.

## JURISDICTION AND VENUE

3.     Jurisdiction is proper in this Court pursuant to the federal diversity of citizenship statute, 28 U.S.C. § 1332(a), because the Plaintiff is a citizen of a different state than the Defendant and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Subcontract that is the subject of this action was finally negotiated and executed in Washington, D.C.

## FACTUAL BACKGROUND

5.     On or about July 30, 2010, Turner was awarded a general contract by the United States Government for Phase Two of the construction of the Biometric Technology Center and Central Utilities Plant Expansion at the Federal Bureau of Investigation Criminal Justice Information Services ("FBI CJIS") Division Complex in Clarksburg, West Virginia (the "Project").

6.     On December 7, 2010, Turner and IX executed Subcontract No. 006 (the "Subcontract"), under which IX agreed to perform and furnish all work, labor, services, materials, plant, equipment, tools, scaffolds, appliances and other things necessary for Earthwork & Site Utilities in consideration for payment in the amount of Four Million Eight Hundred Thousand Dollars ($4,800,000.00).  A true and correct copy of the Subcontract is attached hereto and incorporated by reference as Exhibit 1.

7.     The Subcontract requires IX *inter alia* to perform all of the earthwork and site utilities and related work in accordance with the general contract between Turner and the Federal Government.   Among other work, IX was required to provide all engineering, consultant

2

services, Third Party Testing and Inspection Services, Quality Control/Quality Assurance, monitoring, and survey required for the Subcontract work.

8.      The Subcontract requires IX *inter alia* to: provide excavation and backfill from top of footing for all concrete work, mass excavation to accommodate for final bottom of excavation/toe of slope; provide excavation and backfill/engineered fill where existing footers, walls and pits are removed; remove any unsatisfactory or unsuitable material offsite; import if needed suitable material; provide and install backfill for exterior side of perimeter foundation walls ; and provide terracing at retaining walls and mass backfill of retaining walls.

9.      The Subcontract requires IX to perform its work and provide associated professional services in accordance with certain Specification Sections of the general contract between Turner and the United States Government (hereinafter referred to as the "Specifications") which are specifically identified in Subcontract Section AP-2.   The Specifications included Section 312213, Grading, and Section 312323, Fill.   True and correct copies of these Specification Sections are attached hereto and incorporated by reference as Exhibit 2.

10.     The Subcontract also requires IX to perform its work and provide associated professional services in accordance with the drawings that are a part of the general contract between Turner and the United States Government (hereinafter referred to as the "Drawings") which are also specifically identified in Subcontract Section AP-2.IX has the responsibility under the Subcontract to provide the proper fill material.   Specification Section 312323, ¶ 2.1.A states that the fill shall be as specified in Section 312213.   Section 312213, ¶ 2.1.A.2 in turn specifies that Subsoil Type S2 be used.   Specifically, ¶ 2.1.A.2 states:

Subsoil Type S2: Granular material classifying SM, SP, SW, GM, GP, or GW per ASTM D-2487 shall not have more than 25 percent by weight of grains or particles passing the No. 200 sieve and the plasticity index shall not be more than 6 conforming to WVDOT Standard Specifications Road and Bridges 716.1.1.2. This material must be capable of being compacted to a stable condition.

11.     In addition, Detail 8 on Drawing S-204 requires that the backfill at the Building 9 foundation walls be Soil Type S2 material.

12.     IX is responsible under the Subcontract to provide S2 materials for structural fill and to test the fill material that it was supplying to ensure that the fill material complied with the Specifications. Section 312213, ¶ 3.6.A requires IX to perform laboratory material tests in accordance with ASTM D698. Section 312323, ¶ 3.5.A requires IX to perform laboratory material tests in accordance with ASTM D698 and AASHTO T99.

13.     IX negligently failed to provide and/or perform professional services required under the Subcontract including, but not limited to, performing tests on the fill it supplied as required by the Project Specifications to verify that the fill supplied by IX met the Subcontract requirements.

14.     With regard to the suitability of the fill material, on information and belief, IX failed or refused to procure from others or perform its own soils analysis testing but instead negligently relied on only two (2) tests performed by Thrasher Engineering, Inc. on two (2) samples. IX's reliance on the two (2) tests as proof that all soils taken from various locations on the site would satisfy the Subcontract requirements for S2 materials was not in accordance with the standard of care for similar companies in the location of the Project or elsewhere. Moreover, one (1) of the samples was rejected by Cervantes & Associates, P.C., the Government's consultant, because the sample exceeded the plasticity standards for S2 fill.

4

15.     Thus, IX construed that single passing sample (out of a test universe of two samples) as adequate evidence that all of the soils on the Project site would be suitable for structural fill as required under the Contract Documents.  This extrapolation of a single test result to all soils was not reasonable and not in accordance with the requisite standard of care.

16.     In September 2012, the Project began to experience a small movement on the P32 wall.  The Project also experienced some cracks on the slab on grade.  At that time, Turner believed that the small movement and cracks were typical movement and cracks that could be anticipated on this type of project.

17.     In March 2013, however, the Project began to experience significant movement, shifting, cracking, settlement, and damage to certain structures constructed on the site, including the Plaza Walls, Wall 7, and the slab on grade inside of Building 9.

18.     Turner retained GeoMechanics, Inc. ("GMI") to perform a geotechnical engineering investigation of the Project to determine the cause of the foundation problems and recommend remedial measures.  GMI concluded that the subgrade fill supplied by IX did not meet the Project specifications.

19.     The significant movement, shifting, cracking, settlement, and damage to certain structures constructed on the site, including the Plaza Walls, Wall 7, and the slab on grade inside of Building 9, were a direct and proximate result of IX's negligent failure to properly classify the soil provide fill that complied with the Project Specifications and IX's negligent failure to properly perform those professional services associated with the supply of that fill material.

20.     Turner incurred substantial damages to repair the damaged structures of not less than seven million five hundred thousand dollars ($7,500,000).

21.     Turner has satisfied all conditions precedent to bringing this action.

5

## COUNT I
### (Breach of Contract)

22.     Turner restates and incorporates the allegations in Paragraphs 1 through 20, as though fully set forth herein.

23.     The Subcontract is a valid and binding contract between Turner and IX.

24.     IX breached the Subcontract by failing to perform in accordance with the Subcontract terms specifically including, but not limited to, failing to provide the professional services it contracted to provide. Most notably, IX failed to test the fill material prior to installing it and, as a result, installed fill material that failed to comply with the Project Specifications and caused damage to the Project.

25.     Turner has suffered real and substantial damages of no less than seven million five hundred thousand dollars ($7,500,000), the exact amount to be proven at trial, as a direct result of IX's breach of the Subcontract.

WHEREFORE, Plaintiff Turner Construction Company respectfully requests that this Honorable Court enter judgment in its favor and award monetary damages of no less than seven million five hundred thousand dollars ($7,500,000), the exact amount to be proven at trial, pre-judgment and post-judgment interest, costs, legal fees and disbursements, and all other relief that the Court deems just and necessary.

Dated:        October 22, 2015

Respectfully Submitted,


Stephen M. Seeger, Bar No. 431258
Reckar & Abramson, P.C.
2055 L Street, NW
Suite 750
Washington, D.C. 20036
Tel:    (202)-293-8815
Fax:    (202)-293-7994
E-mail:seeger@pecklaw.com
**Counsel for Plaintiff Turner Construction Company**